IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

UNITED STATES OF AMERICA

v.

TRAVIS JAMAR ELLIOTT,

Defendant.

CRIMINAL NO. 2:17CR16

## MEMORANDUM OPINION

On July 24, 2017, Travis Jamar Elliott ("Defendant") appeared before the Court for sentencing. During the hearing, the Court heard argument on Defendant's two objections to the Presentencing Investigation Report ("PSR") and the parties' respective positions on sentencing. The Court ultimately accepted the PSR without changes and sentenced Defendant to a prison term of fifty-seven (57) months, which constituted a downward variance from the advisory range under the Sentencing Guidelines Manual ("Guidelines" or "USSG") of 84 to 105 months. This Opinion elaborates on the Court's reasoning for the sentence imposed.

### I. FACTUAL AND PROCEDURAL HISTORY

On February 9, 2017, Defendant was named in a one-count criminal indictment, charging him with Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 9222(g)(1) and 924(a)(2) (Count One). ECF No. 3. On April 25, 2017, Defendant appeared before Magistrate Judge Douglas E. Miller and pled guilty to Count One. ECF No. 18. On July 24, 2017, the Court found Defendant guilty of the offense charged in Count One. See ECF No. 29.

Prior to sentencing, the Probation Office prepared Defendant's PSR and determined that Defendant's total offense level was 25. ECF No. 26 ¶ 21. This total offense level reflects a base offense level of 24 pursuant to USSG § 2K2.1(a)(2); a 4-level enhancement pursuant to USSG

1

§ 2K2.1(b)(6)(B) for possessing the firearm in connection with another felony offense (Distribution of Heroin); and a 3-level reduction for Defendant's acceptance of responsibility. Id. ¶¶ 12, 13, 19, 20. Defendant's criminal history category was determined to be IV. Id. ¶ 52. Accordingly, the PSR concluded that Defendant's advisory sentencing range under the Guidelines was 84 to 105 months. Id. ¶ 53.

On July 17, 2017, and July 19, 2017, the Defendant and the United States ("Government") filed their respective positions on sentencing. See ECF No. 27; ECF No. 28. The Government made no objections to the PSR and asked the Court to impose a sentence within the Guidelines' advisory range. ECF No. 28. The Defendant raised two objections to the PSR, which, if sustained, would lower Defendant's total offense level to 15. ECF No. 27 at 12. Notwithstanding those objections, Defendant also asked the Court to depart downward from the advisory range pursuant to USSG § 4A1.3(b) on the grounds that Defendant's criminal history category overrepresented the severity of his criminal history. Id. at 14–15.

On July 24, 2017, the Court adopted the PSR without changes and sentenced Defendant to 57 months in prison and 3 years of supervised release. See ECF No. 29.

## II. DISCUSSION

To determine an appropriate sentence, this Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." Nelson v. United States, 555 U.S. 350, 351 (2009).

### A. DEFENDANT'S GUIDELINES RANGE

The Defendant raised two objections to the Probation Officer's calculation of Defendant's Guidelines range. The Court overruled both objections for the reasons below.

1.   **Virginia Robbery is a "Crime of Violence" under USSG § 4B1.2(a)(2).**

Defendant objects to his base offense level of 24 under USSG § 2K2.1(a)(2). ECF No. 26 ¶ 12. Section 2K2.1(a)(2) provides that a defendant with a firearm offense shall receive a base level of 24 "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." The probation officer applied this offense level after determining that Defendant has one prior crime of violence (a 2006 Virginia robbery conviction) and one prior controlled substance offense (a 2011 Virginia conviction for Possession with Intent, Sell or Distribute Marijuana). Id. ¶¶ 25, 27.

Defendant argues that he should have received a base offense level of 20 under Section 2K2.1(a)(4) because his 2006 Virginia robbery conviction is not a crime of violence under the Guidelines. Specifically, he argues that, in light of the Fourth Circuit's recent holding in United States v. Winston, 850 F.3d 677 (4th Cir. 2017), Virginia robbery, when using the categorical approach, criminalizes a "slight degree" of force that fails to satisfy the "force clause" of the definition and is broader than the generic definition of robbery contained in the "enumerated offense clause" of the definition. See USSG § 4B1.2(a).[1]

Defendant's objection fails because Virginia robbery categorically falls within the

---

[1] USSG § 4B1.2(a) defines "crime of violence" as

> . . . any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that —
>> (1) has as an element the use, attempted use, or threatened use of physical form against the person of another; or
>> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, *robbery*, arson, extortion, or the use or unlawful possession of a firearm . . ."

(emphasis added). Subsection (1) is known as the "force clause" and subsection (2) is known as the "enumerated offense clause."

3

generic definition of robbery. When distilling this generic definition, the Second and Eleventh Circuits concluded that the majority of States define robbery as "the taking of property from another person or from the immediate presence of another person by force or intimidation." See United States v. Walker, 595 F.3d 441, 446 (2d Cir. 2010); United States v. Lockley, 632 F.3d 1238, 1244 (11th Cir. 2011) (quoting Walker, 595 F.3d at 446). Contrary to Defendant's position, Johnson I–level force is not required to satisfy this definition.[2] See, e.g., Lockley, 632 F.3d at 1244 (rejecting the MPC's requirement of "bodily injury" or "committing violence" as part of the generic definition of robbery); see also United States v. Batista, No. 5:09cr37, 2017 WL 2651717, at *4–5 (W.D. Va. June 19, 2017) (holding that New York robbery falls categorically within the generic definition of robbery, which does not "impose a heightened force requirement—like that imposed by Johnson I").

Furthermore, Judge Henry E. Hudson of this Court recently addressed this precise question and found that Virginia robbery qualifies as an enumerated offense under USSG § 4B1.2(a)(2). See Memorandum Opinion, United States v. Wyche, No. 3:17cr21, (E.D. Va. July 21, 2017), Dkt. No. 30. In so holding, Judge Hudson reasoned that

> . . . Virginia's definition of robbery directly mirrors the contemporary generic one in that it criminalizes larceny where the defendant takes property from another against their will—whether by force or fear. This minimal requirement—**independent of the level of force required**—is uniformly present, without exception, in every jurisdiction throughout the country. Therefore, . . common law robbery in Virginia comports to "a mainstream [definition] . . . [and is] not an outlier," rendering it well within the contemporary generic conception of the crime.

Id. at 5 (emphasis added) (quoting Flores-Granados, 783 F.3d at 498). The Court found no reason to depart from Judge Hudson's well-reasoned opinion. Therefore, Defendant's first

---

[2] "Johnson I" refers to Johnson v. United States, 559 U.S. 133, 134 (2010) (holding that, for purposes of the "force clause" in the Armed Career Criminal Act ("ACCA"), "physical force" means "violent force—i.e., force capable of causing physical pain or injury to another person"). In Winston, the Fourth Circuit held that Virginia robbery does not categorically satisfy this requirement. 850 F.3d at 685.

4

objection to the PSR was overruled.

### 2. Defendant Was Not a "Minimal Participant" Under USSG § 3B1.2(a).

The Defendant also objects to his PSR on the grounds that the probation officer should have reduced his total offense level by four levels for being a minimal participant under USSG § 3B1.2(a) and an additional two levels for having a minor role under USSG § 2D1.1(b)(16). ECF No. 27 at 9–11. In support, Defendant argues that the confidential witness ("CW")—not Defendant—was the architect of Defendant's criminal activity. Defendant highlights the fact that CW approached Defendant and requested that he participate in a sham transaction to sell a firearm and allegedly "fake" drugs; that CW delivered the handgun and said drugs to Defendant; and that only CW—not Defendant—knew the drugs were real and understood the true nature and purpose of the transaction. Id. at 10. Defendant also argues that he and CW were childhood friends, that Defendant was "motivated by his longstanding relationship with [CW]" to participate in the sham sale he proposed, and that Defendant was "otherwise unlikely to commit such an offense." Id. at 11.

Upon consideration of the factors laid out in the Guidelines' commentary with respect to the "minimal participant" reduction, the Court found that Defendant's participation in the crime does not qualify for such a reduction. See USSG § 3B1.2, comment (n.3(C)). Defendant was charged and convicted of being a felon in possession of a firearm. He agreed with CW to possess a firearm to execute a sham sale, and Defendant knowingly did so possess. Defendant also stood to gain $200 from his participation in the transaction; he exercised decision-making authority; and he understood the criminal nature of the transaction. Therefore, Defendant's role in the crime was not minimal, and the probation officer appropriately declined to grant Defendant a reduction under USSG § 3B1.2(a).

For this reason, a reduction under USSG § 2D1.1(b)(16) is also improper, as the

5

defendant must be deemed a "minimal participant" under § 3B1.2(a) to qualify. Regardless, Part D of the Guidelines pertains to drug offenses and narco-terrorism, of which Defendant was <u>not</u> convicted in this case. Therefore, no additional offense-level reductions were warranted, and the Court overruled Defendant's second objection to the PSR.

Having overruled both of Defendant's objections to the PSR, the Court ultimately adopted the PSR without changes and determined that Defendant's Guidelines range was properly calculated as 84 to 105 months.

### B. THE 18 U.S.C. § 3553(A) FACTORS

However, as noted above, determining the Defendant's Guidelines sentencing range is only the first stage of the inquiry. 18 U.S.C. § 3553(a) requires this Court to consider factors in addition to the need for deterrence in order to arrive at a sentence "sufficient, but not greater than necessary" to comply with the purposes and goals of sentencing as set forth in § 3553(a)(2). Section 3553(a) provides, in relevant part, that

> The court, in determining the particular sentence to be imposed, shall consider--
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant; and
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

#### 1. History and Characteristics of the Defendant

Defendant is 30 years old and from Portsmouth, VA. He had a difficult childhood and was raised primarily in foster care. PSR, ECF No. 26, ¶ 35. His mother, Denise Bracey, admits

that she was in a "bad place" when Defendant was young and that she was incapable of raising him. Id. Defendant's father played no role in his life and died in 2001. Id. ¶ 37. In 2014, Defendant reunited with his mother and moved in with her and her husband in Portsmouth, which is where Defendant resided at the time of his arrest for the instant offense. Id. ¶ 35.

Defendant has never married and has no children. Id. ¶ 36. He is in good mental and physical health. Id. ¶¶ 38–40. He has no history of mental health treatment. Id. ¶ 40. He admits that he has used marijuana since age 16, and he started drinking on a "social basis" when he was 22. Id. ¶ 41. But he reports no serious substance-abuse problems or addictions. Id. Moreover, based on the letters of support filed with the Court, Defendant has a strong network of family and friends who speak highly of his work ethic, intelligence, and treatment of others. See ECF No. 27-1.

### 2. Other Factors

Defendant's offense was undoubtedly serious, and the need to deter similar conduct is great. He knowingly possessed a firearm as a convicted felon, and he agreed to participate in a sham drug sale. However, the Court was also mindful of the fact that Defendant was motivated to engage in criminal conduct with CW based on their relationship and prior history rather than a habit and practice of participating in such conduct. Critically, Defendant did not have any criminal convictions or run-ins with law enforcement (save one traffic offense) for six years prior to the commission of the instant offense. See PSR, ECF No. 26 ¶¶ 27–34. Defendant also reported a consistent employment history since 2014, and he was employed full-time at the time of his arrest. Id. ¶¶ 43–45.[3] Based on these facts and the circumstances of the offense,

---

[3] Although the probation officer was unable to verify Defendant's employment history prior to sentencing, Defendant's most recent position at Pacorini in Suffolk, VA was also reported by his brother and co-worker, Randall, in a letter submitted to the Court with Defendant's position paper. ECF No. 27-1 at 5.

Defendant's offense conduct likely stemmed from an isolated, though serious, lapse in judgment. Therefore, the need to deter future criminal conduct and the need to protect the public are considerably less in this case than in many other felon-in-possession cases.

For these reasons, the Court found that a sentence within the Guidelines range of 84 to 105 months was greater than necessary to achieve the goals and purposes of sentencing set forth in 18 U.S.C. § 3553, and determined that a downward variance was necessary.

### III. CONCLUSION

After weighing all of the Section 3553(a) factors, the Court found that a sentence of 57 months is sufficient but not greater than necessary to provide adequate deterrence, public protection, just punishment, and an opportunity for correctional treatment to the Defendant. For these reasons, the Court sentenced Defendant to 57 months in prison plus a 3-year term of supervised release.

The Clerk is **DIRECTED** to file this Opinion simultaneously with the Judgment in this case. The Clerk is further **DIRECTED** to forward a copy of this Opinion to all Counsel of Record.

**IT IS SO ORDERED.**

/s/
Robert G. Doumar
Senior United States District Judge
UNITED STATES DISTRICT JUDGE

Norfolk, VA
July 28, 2017